*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1441**

In the Matter of the Welfare of the Children of:
A. R. H. and G. J. B., Parents.

**Filed March 7, 2016
Affirmed
Stauber, Judge**

Clay County District Court
File No. 14-JV-15-351

Brian P. Toay, Wold Johnson, P.C., Fargo, North Dakota (for appellant G.J.B.)

Shawn Schmidt, Schmidt Law Office, Moorhead, Minnesota (for respondent A.R.H.)

Brian J. Melton, Clay County Attorney, Cheryl R. Duysen, Assistant County Attorney,
Moorhead, Minnesota (for respondent)

Laurie Christianson, Moorhead, Minnesota (guardian ad litem)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from the termination of his parental rights (TPR), appellant-father argues that the district court made (1) several findings of fact that are not supported by the record and (2) abused its discretion by concluding that statutory bases existed to terminate his parental rights. He also argues that the district court abused its discretion

by refusing to allow him to call one of his minor children as a witness at trial without first conducting a hearing to determine if she was competent to testify. We affirm.

## FACTS

Appellant G.J.B. is the biological father, primary caretaker, and full custodian of H.J.B., born May 23, 2011, and L.M.B., born March 4, 2010.[1] In May 2012, a neighbor called 911 after the neighbor noticed that appellant was too intoxicated to care for the children. Appellant was observed stumbling through the hallway of his apartment building while holding H.J.B. and running into a doorframe causing, H.J.B. to hit his head. H.J.B. needed medical attention as a result of the accident and was taken to the emergency room. H.J.B. and L.M.B. were subsequently placed in foster care and appellant was charged with child endangerment, child neglect, obstructing legal process, and disorderly conduct.

After the children were adjudicated children in need of protection or services (CHIPS), appellant successfully completed the case plan, which included inpatient chemical-dependency treatment. The children were returned to appellant in January 2013, and the CHIPS proceeding was dismissed. But in August 2014, the children were again removed from appellant's home and placed in foster care following appellant's arrest for felony domestic assault. The incident involved appellant's girlfriend with whom appellant and the children were living. When the investigating deputy arrived at

---

[1] A.R.H. is the biological mother of the children. Shortly after these termination proceedings were initiated, A.R.H. voluntarily terminated her parental rights, and she did not proceed further in these TPR proceedings.

the scene, appellant appeared to be very intoxicated, and the girlfriend stated that appellant had been drinking. Although appellant told the investigating deputy that he had consumed a pint of vodka or whiskey, he later denied drinking any alcohol.

H.J.B. and L.M.B. were initially placed in a relative foster home where appellant exercised regular supervised visitation. But in October 2014, the children were moved to a non-relative foster home. At about the same time, a case plan was initiated with the primary goal of reunification. The case plan was designed to address chronic issues related to appellant's chemical dependency and anger management, as well as meeting the children's needs. Although appellant experienced periods where he appeared to be making progress on the case plan, the children were eventually adjudicated CHIPS on October 21, 2014.

After the children were moved to a non-relative foster home, appellant's supervised visitation was changed to Rainbow Bridge, a supervised visitation center. During his visits with the children at Rainbow Bridge, appellant consistently complained about the children's hygiene, specifically the feces stains he would find on the children's underwear. At about the same time, Robin Christianson, an employee at Rainbow Bridge, became concerned about the frequent and lengthy bathroom breaks appellant would take with the children, particularly L.M.B. This conduct concerned Debra Nagle, the assigned social worker who observed appellant wiping L.M.B. in a "very odd" manner. Nagle's concern about the bathroom visits was exacerbated by seemingly sexual comments L.M.B. would make while she was being wiped.

On November 24, 2014, Carissa Cowley of the Red River Children's Advocacy Center conducted a forensic interview of L.M.B. The interview was conducted after a mandated reporter informed Nagle that L.M.B. had disclosed sexual abuse. During the interview, L.M.B. indicated that she had been sexually abused by appellant. As a result of these allegations, contact between appellant and the children ceased.

In January 2015, respondent Clay County Social Services filed a petition to terminate appellant's parental rights. At trial, the district court declined to allow appellant to call L.M.B. as a witness, but did not conduct a competency hearing prior to making its decision. The district court subsequently filed an order concluding that under Minn. Stat. § 260C.301, subd. 1(b)(4) (2014), appellant is palpably unfit to be a party to the parent and child relationship because of conditions directly relating to the parent and child relationship, specifically appellant's "chronic and severe chemical dependency contributing to [his] inability to properly care for and manage himself independently," which renders him unable to appropriately care for L.M.B. and H.J.B. The district court also concluded that under Minn. Stat. § 260C.301, subd. 1(b)(5) (2014), "reasonable efforts, under the direction of the Court, have failed to correct the conditions" leading to the children's placement outside of the home, "specifically [appellant's] chronic and severe chemical dependency." The district court further concluded that under Minn. Stat. § 260C.301, subd. 1(b)(6) (2014), the children have "experienced egregious harm" in appellant's care. The district court found that this harm included appellant's "repeated acts of sexual abuse against L.M.B." Thus, the district court concluded that grounds for termination of appellant's rights to H.J.B. and L.M.B. were proven by clear and

4

convincing evidence under Minn. Stat. § 260C.301, subd. 1(b)(4)-(6), and that under Minn. Stat. § 260C.301, subd. 7 (2014), it is in the best interests of the children to terminate appellant's parental rights. This appeal followed.

## D E C I S I O N

Courts presume that natural parents are fit to care for their children, and "[p]arental rights may be terminated only for grave and weighty reasons." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (quotation omitted). The petitioning county bears the burden of proving statutory grounds for termination by clear and convincing evidence. *Id.* Whether to terminate parental rights is discretionary with the district court. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014). "[O]n appeal from a district court's decision to terminate parental rights, we review the district court's findings of the underlying facts for clear error, but the determination of whether a particular statutory basis for involuntarily terminating parental rights is present is reviewed for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012); *see* Minn. Stat. § 260C.301, subd. 1(b) (2014) (listing bases for terminating parental rights). We will affirm the district court's decision if any of the statutory grounds for termination are supported by clear and convincing evidence and termination of parental rights is in the children's best interests. *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008).

Appellant argues that (1) the district court made numerous clearly erroneous findings of fact to justify the termination of his parental rights and (2) the conclusions of

5

law issued by the district court are not supported by clear and convincing evidence. Thus, appellant argues that the district court abused its discretion by terminating his parental rights.

## I.     Findings of fact

A district court's finding of fact is clearly erroneous "if it is manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *J.K.T.*, 814 N.W.2d at 87 (quotation omitted).  We grant considerable deference to a district court's decision to terminate parental rights because it "is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

Appellant challenges several of the district court's findings of fact, arguing that "[g]iven the great volume of factual errors present in the court's findings, this court should be left with no choice but to reverse the district court and dismiss the permanency petition at this time."  The county concedes that the district court's findings "contain some errors."  But the county argues that the errors are generally minor and do not affect the decision as a whole.

We agree that the errors contained in the district court's findings of fact are not so significant as to warrant reversal.  For example, in finding 38 the district court confused the names of two witnesses who testified about statements made by L.M.B. regarding the alleged sexual abuse by appellant.  But this error is essentially a typographic error; when credited to the proper witness, the testimony is supported by the record.  Moreover, some of the alleged errors in the findings stem from appellant's misreading of the findings,

such as his claim that in finding 47, the district court mistakenly refers to the incident when appellant fell down the stairs while holding H.J.B. as occurring in 2014. A close review of the finding, however, indicates that nowhere in the finding does the district court state that the incident occurred in 2014. Finally, despite appellant's claims to the contrary, some of the challenged findings, such as appellant's contention that the district court's finding that the children had "considerable behavior" issues when they entered foster care, are supported by the record. The district court made extensive findings of fact, most of which are fully supported by the record. And to the extent that a few of the findings do contain errors, the errors are minor and surely do not affect the decision as a whole. *See In re Welfare of Children of D.F.*, 752 N.W.2d 88, 98 (Minn. App. 1998) (stating that this court will not reverse for harmless error).

## II.    Conclusions of law

The district court found clear and convincing evidence supporting the findings of fact underlying three statutory grounds for terminating appellant's parental rights. *See* Minn. Stat. § 260C.301, subd. 1(b)(4), (5), (6). Appellant contends that none of these three grounds were sufficiently supported by clear and convincing evidence. We disagree.

### A.    Palpable unfitness

A TPR may be supported by a finding that a parent is palpably unfit to be a party to the parent and child relationship

> because of a consistent pattern of specific conduct before the
> child or of specific conditions directly relating to the parent and
> child relationship either of which are determined by the court

7

> to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4).

Here, in terminating appellant's parental rights under section 260C.301, subdivision 1(b)(4), the district court found that appellant's "chronic and severe chemical dependency contributing to [his] inability to properly care for and manage himself independently" renders him unable, for the foreseeable future, to care appropriately for L.M.B. and H.J.B.'s ongoing needs. Appellant argues that the district court's decision to terminate his parental rights under Minn. Stat. § 260C.301, subd. 1(b)(4), is based on an incorrect interpretation the statute and is not supported by clear and convincing evidence.

Appellant's argument is without merit. The supreme court has held that substance abuse alone does not render a parent palpably unfit, and reversed a TPR based on palpable unfitness when there were no findings "directly relating" the parent's substance use and alcohol consumption to his relationship with the child. *T.R.*, 750 N.W.2d at 663. Here, there is clear and convincing evidence demonstrating that appellant's alcohol consumption directly relates to his ability to adequately care for his children. The district court found that in 2012, H.J.B. needed medical attention after H.J.B. hit his head on a doorframe while he was being held by appellant, who was stumbling around his apartment while intoxicated. The district court also found that in 2014, appellant was charged with domestic assault stemming from an incident between appellant and his live-in girlfriend, who were both intoxicated. The district court found that when law enforcement arrived at the scene, the children were in appellant's care, but he was passed

8

out in his bedroom.  Moreover, the district court found that although evidence presented at trial demonstrates that appellant continues to drink heavily, he consistently tells county employees that he has not consumed alcohol since May 2012.  In fact, the district court found that, according to the manager of a local liquor store, appellant "would come into the store at least two to three times each week and buy" a 12-pack of beer and a liter of whiskey.  Appellant's dishonesty about his chemical use makes it impossible to participate and complete chemical-dependency treatment.  The district court's findings are supported by the record.  Accordingly, the district court did not abuse its discretion by concluding that appellant is palpably unfit to be a party to the parent and child relationship due to his alcohol dependency.

### B.    Reasonable efforts

Under Minn. Stat. § 260C.301, subd. 1(b)(5), parental rights may be terminated if "following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement."  In any TPR proceeding, the district court must make "specific findings" that the county made reasonable efforts to reunify the child and the parent.  Minn. Stat. § 260C.301, subd. 8 (2014).  To determine whether reasonable efforts were made, the district court must consider "whether [the] services [offered] to the child and family were:  (1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances."  Minn. Stat. § 260.012(h) (2014).

9

Appellant argues that the district court's conclusion that the county made reasonable efforts to reunify him with the children is not supported by the record because the county "did virtually nothing to assist in reunifying [him] with his children." But, as the district court found, the children were placed outside of the home due to appellant's problems with alcohol dependency. Following the out-of-home placement, a case plan was developed that required appellant to participate in a chemical-dependency program. The district court specifically found that the treatment programs offered to appellant were "culturally, linguistically, and clinically appropriate," but that appellant failed to follow through with the case plan, particularly by failing to admit his alcohol dependency. The district court's findings refute appellant's argument that the county did nothing to assist appellant in reunifying him with his children. Instead, the district court's findings demonstrate that by failing to comply with the case plan, appellant refused to accept the county's assistance. The district court's findings are supported by the record. Thus, the district court did not abuse its discretion by concluding that the grounds for terminating appellant's parental rights under Minn. Stat. § 260C.301, subd. 1(b)(5), were proven by clear and convincing evidence.

### C. Egregious harm

A district court may terminate all rights of a parent to a child if it finds that a child has experienced egregious harm in the parent's care. Minn. Stat. § 260C.301, subd. 1(b)(6). Egregious harm includes "conduct toward a child that constitutes criminal sexual conduct." Minn. Stat. § 260C.007, subd. 14(10) (2014). Here, the district court found that the children have experienced egregious harm while in appellant's care,

10

including, but not limited to, appellant's "sexual abuse against" L.M.B. But because we have already determined that the district court did not abuse its discretion by terminating appellant's parental rights based on palpable unfitness and reasonable efforts, we need not address appellant's challenge to the district court's conclusion that the children have experienced egregious harm in his care.

Finally, appellant argues that the district court "abused its discretion when it refused to allow [him] to call [L.M.B.] as a witness at trial without first conducting a competency hearing." Appellant claims that the refusal to conduct a competency hearing "had a profound impact on [his] ability to defend against the allegations of sexual abuse." Thus, appellant contends that he is entitled to a new trial so that the proper procedure can be followed.

Appellant's argument with respect to the competency hearing pertains specifically to the allegations of sexual abuse and the termination of his parental rights on that ground. However, as set forth above, on this record we need not address this basis for terminating appellant's parental rights. And even if even if we were to address appellant's argument that the district court was required to conduct a competency hearing before deciding whether L.M.B. was not competent to testify, we would conclude that the argument lacks merit.

**Affirmed.**

11